## National Land and Investment Company Appeal

*Holbrook M. Bunting, Jr.*, and *Francis X. Hope, Jr.*, for appellant.

*Rogers & O'Neill*, for the township.

GAWTHROP, P. J., May 29, 1963.—We granted reargument in this matter on application of the township citing the following proviesions of article XII-A, sec. 16, of The Second Class Township Code of May 1, 1933, P. L. 103, 53 PS §66257, which were not specifically referred to in previous oral argument or briefs of counsel:

"Where subdivision regulations have been adopted under the authority of this article, no lot in a subdivision may be sold, no permit to erect, alter or repair any building upon land in a subdivision may be issued, and no building may be erected in a subdivision, unless and until a subdivision plan has been approved and, where required, recorded, and until the improvements required by the board of township supervisors in connection therewith have either been constructed or guaranteed, as hereinabove provided. Where, owing to special conditions, a literal enforcement of this provision would result in unnecessary hardship, the board of township supervisors may make such reasonable exception thereto as will not be contrary to the public interest, and may permit the sale of a lot, issuance of a permit, or erection of a building, subject to conditions necessary to assure adequate streets and other public improvements."

Under the quoted provisions of the code expressly dealing with *land subdivision*, the township asserts that no building permit and certificate of occupancy may be granted by a board of adjustment appointed and acting under the *zoning* provisions of the code and the zoning ordinance enacted thereunder. Reference to the statutory powers and duties of the board seems to refute that argument.

The Code in article XX, sec. 2007, added July 10, 1947, P. L. 1481, sec. 47, as amended, 53 PS §67007, provides:

"(g) The board of adjustment shall have the following powers:

"(1) To hear and decide appeals where it is alleged there is error in any order, requirement, decision or determination . . . made by the zoning officer in the enforcement of *this article* or of *any ordinance adopted pursuant thereto.*

"(2) To hear and decide special exceptions *to the terms of the ordinance* upon which such board is required to pass *under such ordinance.*

"(3) To authorize, upon appeal, in specific cases such variance *from the terms of the ordinance . . .* where . . . a literal enforcement of *the provisions of the ordinance* will result in unnecessary hardship . . .

"(h) In exercising the above mentioned powers, such board may, *in conformity with the provisions of this article,* reverse or affirm, wholly or partly or may modify, the order, requirement, decision or determination . . . appealed from . . ." (Italics supplied.)

Every grant of power made to the board is expressly founded upon article XX, the zoning enabling legislation, and related to the zoning ordinance enacted under it, i.e., enforcement of "this article", any "ordinance adopted pursuant thereto," special exceptions to "the terms of the ordinance", under "such ordinance", variance from the "terms of the ordinance," "enforcement of the provisions of the ordinance", and "in conformity with the provisions of this article." The board is not authorized upon any basis to incorporate in its functions the provisions of land subdivision regulations adopted under article XII-A of the Code, the enforcement of which is by the terms of that article expressly vested in the board of supervisors under wholly different procedure.

Under section 63 of the Statutory Construction Act of May 28, 1937 P. L. 1019, 46 PS §563, wherever a general provision of a law conflicts with a special provision in the same or another law the two shall be construed, if possible, to give effect to both. The powers of the board of adjustment are special provisions governing application of the zoning enabling legislation and the ordinance adopted under it. That part of article XII-A, the land subdivision enabling legislation, which purports to prohibit issuance of a permit to erect, alter or repair any building upon land in a subdivision unless and until a subdivision plan has been approved is a general provision. But the two may be construed together to give effect to both. Where both a building permit and approval of a subdivision plan are ultimately required the question is only which comes first, for both are applicable.

The Statutory Construction Act, supra, section 51, provides that the object of all interpretation and construction of a statute is to ascertain and effectuate the intention of the legislature, giving effect, if possible, to all its provisions. Section 52 thereof provides that in ascertaining such intention courts may be guided by the presumption that the legislature does not intend a result that is absurd, impossible of execution or unreasonable. To compel a landowner to incur the engineering expense and expend the time and effort to obtain approval of a subdivision plan prepared on the basis of a four acre minimum lot area where he avowedly desires in good faith to attack the legality and reasonableness of the lot area limitation imposes an unreasonable and unnecessary burden upon him. If the four acre minimum area is a legally permissible limitation the landowner is benefited and the municipality is not harmed by having that matter determined at the outset before a subdivision plan is prepared and submitted on a four acre lot basis. The owner is pri-

marily concerned with validity of the four acre lot limitation. If he is legally entitled and desires to build upon and occupy a lot of lesser area any subdivision plan submitted on a four-acre lot basis would be a waste of time and expense. Even were it submitted and approved on that basis, if he thereafter applied for a building permit and certificate of occupancy for a lot of lesser area he could again be met by the same objection on the part of the municipality. To require such approval before action is taken on his zoning application is therefore to require a vain thing, and thus is absurd and unreasonable.

The municipality is not left unprotected by initial determination of the zoning question. The land and its owner are still bound by the subdivision regulations. The lot and building erected on it, whatever the lot area, may not be subdivided until a subdivision plan has been aproved *after* the zoning question is determined. Otherwise the owner-subdivider is guilty of a misdemeanor and subject to both fine and imprisonment. This is an eminently practicable deterrent to any owner and a substantial guarantee of compliance with the subdivision regulations. We can perceive no valid reason why the question of lot area was not, and every reason why it was, intended by the legislature to be determined preliminarily without the absurd and unreasonable requirement of putting the landowner to what might be a useless and needless expenditure of time, effort and money. In our view the legislature never intended by enactment of section 16 of article XII-A of the code to erect such a roadblock to the determination of this basic zoning question which is the key to the other questions involved and basically affects the owner's right to the use and ultimate disposition of his property.

The township argues that the owner does not actually intend to build on the one acre lot and that

therefore its zoning application is not made in good faith but merely to attack the four acre minimum lot area requirement. Suffice it to say the record does not support such assertion. Appellant under date of April 17, 1962, filed an application for building permit and certificate of occupancy supported by a plot plan of the proposed lot and dwelling, building plans and specifications for the proposed dwelling, an application for construction of sanitary sewage disposal facilities and paid the filing fee. A clearer indication of intention to construct a house on the lot in question could hardly be imagined. Furthermore, the owner was not permitted before the board of adjustment to develop the merits of its case.

Neither Home Life Insurance Co. of America v. Board of Adjustment, 393 Pa. 447, nor Sgarlat v. Kingston Borough Board of Adjustment, 407 Pa. 324, cited by the township, is controlling or apposite. In the former a request for a variance, rather than an application for a building permit supported by a drawing of the proposed structure, was filed with the superintendent of building inspection. Thus the case was procedurally faulty from the outset, but admittedly the owner had no present plan for use of the premises and made no request as to use which was refused under the ordinance. In the latter case the owners admittedly attacked the zoning ordinance for the sole purpose of obtaining judicial determination that their land should be valued as top soil, sand and gravel for damage purposes in a condemnation proceeding, *expressly disavowing* any intention to use the permit sought under the ordinance, and thus initiating a fictitious zoning proceeding. Such is not this case, where an apparently bona fide application for a permit and certificate was made.

By amendment to the zoning ordinance on February 19, 1962, the township redistricted the lands of this

432

owner from "A Residence District," having a minimum lot area of one acre ever since the adoption of the original zoning ordinance in 1939, to "AAA Residence District," having a minimum lot area of four acres. This was done after a predecessor developer in July, 1961, had sought approval of a subdivision plan of the same premises on the then prevailing one acre minimum lot area basis, and after this appellant as equitable owner had made an identical application for subdivision approval dated February 12, 1962, one week before the date of the amendment to the zoning ordinance, and in support of which plans had already been received by the township (n.t. 14, 15). We think for the reasons stated that the owner has a right, without obtaining prior approval of a subdivision plan, to have an answer to the question whether the township may lawfully restrict it to development of its lands in lots of not less than four acres in area.

Since the subdivision regulations ultimately will control development of appellant's lands if a permit should issue for a lot less than four acres in area it would seem unnecessary to impose upon its issuance a condition that subdivision approval be thereafter obtained. But in the absence of protest by the owner such a condition or qualification might be imposed upon its issuance: Cf. Bregman v. Exley, 354 Pa. 25, 30.

After thorough reconsideration of the matter we conclude that there is no reason to modify the order entered herein on April 12, 1963.